**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
Libancell S.A.L.,                              :
                                               :
      Petitioner,                         :         **06 Civ. 2765 (HB)**
                                               :
      -against-                           :         **OPINION & ORDER**
                                               :
The Republic of Lebanon,                       :
                                               :
      Respondent.                         :
-----------------------------------------------------X

**Hon. Harold Baer, Jr., District Judge:**

      On April 10, 2006, Libancell S.A.L. ("Libancell" or "petitioner") moved ex parte for a temporary restraining order ("TRO") preventing, *inter alia*, Deutsche Bank Trust Company Americas ("Deutsche Bank") from transferring or disposing of any assets in which the Republic of Lebanon ("Lebanon") had an interest. This Court issued the TRO and required Lebanon to show cause on April 18, 2006 why a preliminary injunction and order of attachment should not issue. Prior to the hearing, Caisse Nationale des Caisses d'Epargne, S.A. ("CNCE"), IXIS Corporate & Investment Bank, S.A. ("IXIS"),[1] and Banque du Liban ("Central Bank of Lebanon" or "Central Bank")[2] moved by order to show cause to intervene in the action in opposition to Libancell's motion. Lebanon and non-party Deutsche Bank also submitted memoranda and appeared at the hearing. On April 18, 2006, I vacated the TRO. For the reasons that follow, Libancell's motion for a preliminary injunction and order of attachment is DENIED.

**BACKGROUND**

      The following facts are taken from the parties' affidavits submitted in connection with this motion and, except as where otherwise noted, are not in dispute. Libancell, a Lebanese corporation, is involved in the telecommunications industry in Lebanon. Beginning in 1994, Libancell contracted with Lebanon to provide cellular telephone service. Disputes arose between Libancell and Lebanon regarding their agreement, and

---

[1] IXIS is a wholly owned subsidiary of CNCE.
[2] It is undisputed that Banque du Liban is in fact the central bank of Lebanon.

1

the parties proceeded to arbitration under the aegis of the United Nations Commission on International Trade Law ("UNCITRAL"). The bulk of the arbitration occurred in Beirut. On July 11, 2005, the UNCITRAL tribunal issued an award in favor of Libancell in the amount of $265,158,184.00, plus interest. On September 26, 2005, the Supreme Court of Paris, France entered an order of "Exequatur" (analogous to confirmation here) permitting enforcement of the award by Libancell.

On April 10, 2006, simultaneous with the filing of its ex parte motion for a TRO, Libancell filed a petition in this court to confirm the UNCITRAL award or, in the alternative, to recognize and enforce the French judgment. In support of its request for a TRO, Libancell represented that it had reason to believe that Lebanon would issue several hundred million dollars in capital notes through New York financial institutions on April 12, 2006. Libancell sought to prevent Lebanon from transferring the proceeds of this bond sale outside of this jurisdiction. However, having apparently received word of an impending attachment, Lebanon cancelled the offering. Instead, acting upon the TRO, Deutsche Bank restrained $162,911,250.00 in funds claimed by the Central Bank of Lebanon. These funds comprised two wire transfers between the Central Bank and IXIS, for which Deutsche Bank acted as intermediary.

## DISCUSSION

### A. Motions to Intervene

Rule 24(a) provides for intervention as of right when "the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may . . . impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). See also Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d 92, 96-97 (2d Cir. 1990).

By Order to Show Cause dated April 17, 2006, the Central Bank sought to interevene "for the limited purpose of asserting [its] immunity from pre or post judgment attachment or execution (and any related injunctive relief) with respect to the Central Bank's property held for its own use. . ." This motion was unopposed, and the Central

Bank was permitted to appear and present argument at the April 18th hearing. Thus, the Central Bank's motion to intervene for the limited purpose of opposing the April 10th TRO is granted, *nunc pro tunc*. In addition, CNCE and IXIS, by Order to Show Cause dated April 18, 2006, moved to intervene and to assert a counterclaim for damages against Libancell. CNCE and IXIS appeared at the April 18th hearing. However, on May 2, 2006 Libancell filed an opposition to CNCE and IXIS' motion to intervene. By Notice dated May 12, 2006, CNCE and IXIS' motion was withdrawn. Therefore, CNCE and IXIS' motion to intervene is denied as moot.

### B. Order of Attachment

Pursuant to Rule 64, "all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available [as] . . . provided by the law of the state in which the district court is held. . ." Fed. R. Civ. P. 64. New York law provides for attachment in actions for money damages when, *inter alia*, "the defendant is a nondomicilliary residing without the state" or "the cause of action is based on a [foreign] judgment . . . which qualifies for recognition under the provisions of article 53." N.Y. C.P.L.R. §§ 6201(1), (5). In addition, New York allows for the entry of an ex parte temporary restraining order pending the outcome of a motion on notice for an order of attachment. See N.Y. C.P.L.R. § 6210 ("Upon a motion on notice for an order of attachment, the court may, without notice to the defendant, grant a temporary restraining order prohibiting the transfer of assets by a garnishee. . ."). Libancell concedes that the attachment sought here would be "prejudgment" because the arbitration award has not yet been reduced to a judgment in the United States. (See Petioner's Memorandum of Law dated April 10, 2006 ("Petitioner's Mem.") at 9 n.2).

### 1. Foreign Sovereign Immunities Act

The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq.*, "'sets forth the sole and exclusive standards to be used in resolving questions of sovereign immunity raised by foreign states before Federal and State courts . . .'" Banco de Seguros del Estado v. Mutual Marine Office, Inc., 344 F.3d 255, 260 (2d Cir. 2003)

(quoting H.R. Rep. No. 94-1487, 94th Cong., 2d Sess. (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6610). Thus, the FSIA "governs actions against foreign states and agencies or instrumentalities of foreign states." Concord Reinsurance Co., Ltd. v. Caja Nacional de Ahorro Y Seguro, No. 93 Civ. 6606, 1994 WL 86401, *1 (S.D.N.Y. March 16, 1994). Petitioner does not dispute that both the Republic of Lebanon and the Central Bank of Lebanon are subject to the FSIA.

Pursuant to the FSIA, "[f]oreign states are immune from prejudgment attachment of their assets used for commercial activity in the United States, unless 'the foreign state has *explicitly waived* its immunity from attachment prior to judgment . . .'" Banco de Seguros, 344 F.2d at 261 (quoting 28 U.S.C. § 1610(d)(1)) (emphasis in original). "[A] waiver of immunity from prejudgment attachment must be explicit in the common sense meaning of that word: 'the asserted waiver must demonstrate unambiguously the foreign state's intention to waive its immunity from prejudgment attachment in this country.'" Banco de Seguros, 344 F.2d at 261 (quoting S & S Mach. Co. v. Masinexportimport, 706 F.2d 411, 416 (2d Cir. 1983)).

Furthermore, the FSIA also provides that the "property of a 'foreign central bank' . . . 'held for its own account' is immune from attachment . . . unless the bank . . . or its parent foreign government [']has explicitly waived its immunity from attachment in aid of execution, or from execution. . .'" Concord Reinsurance, 1994 WL 86401, *2 (quoting 28 U.S.C. 1611(b)) (emphasis omitted). Thus, while a central bank's immunity from attachment in aid of execution (i.e., post judgment attachment) may be waived, the property of a foreign central bank "is absolutely immune from *prejudgment* attachment, and that immunity cannot be waived." Concord Reinsurance, 1994 WL 86401, *2 (emphasis added).

Here, the TRO restrained Lebanon and Deutsche Bank as well as "any other persons having actual notice" from transferring "any property or assets in their possession or custody . . . in which respondent the Republic [of Lebanon] ha[d] an interest, including any funds relating to the exchange and issuance of commercial notes" referenced in the March 30, 2006 offering prospectus. (Order to Show Cause dated April 10, 2006). Thus the TRO, while apparently intended to restrain the proceeds from a specific bond offering, in fact effectuated the restraint of other funds in which Lebanon had "an

4

interest." This included the two wire transfers to which the Central Bank was a party, both of which involved funds held by the Central Bank "for its own account," i.e., exclusively for central banking purposes. (Declaration of Marwan M. Nsouli, dated April 15, 2006 ¶ 7). These funds are absolutely immune from prejudgment attachment. See 28 U.S.C. § 1611(b).[3]

However, the FSIA does provide for prejudgment attachment of funds used for commercial activities, when immunity from prejudgment attachment has been explicitly waived. See 28 U.S.C. § 1610(d). A sovereign debt offering is a commercial activity within the definition of the FSIA. See Republic of Argentina v. Weltover, 504 U.S. 607, 614 (1992) ("when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are "commercial" within the meaning of the FSIA"). Thus, before Libancell may be permitted to attach the proceeds of a potential debt offering, I must determine whether Lebanon has explicitly waived its immunity from prejudgment attachment.

Libancell argues that: 1) Lebanon waived its immunity from prejudgment attachment by becoming a party to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), 9 U.S.C. § 201, *et seq.*, ; and 2) Lebanon's agreement to arbitrate its dispute in accordance with UNCITRAL arbitration rules also constituted such a waiver. Both arguments are unavailing.

Article VI of the New York Convention provides:

> If an application for the setting aside or suspension of [an] award has been made to a competent authority referred to in article V(1)(e), the authority before which the award is sought to be relied upon may . . . on the application of the party claiming enforcement of the award, order the other party to give suitable security.

9 U.S.C. § 201, art VI. See Skandia America Reinsurance Corp. v. Caja Nacional de Ahorro Y Segoro, No. 96 Civ. 2301, 1997 WL 278054, *5 (S.D.N.Y. May 23, 1997). Under Article V(1)(e) of the New York Convention, "a competent authority is 'a

---

[3] At the hearing, Libancell requested a three day extension of the TRO with respect to the funds held by Deutsche Bank belonging to the Central Bank. Libancell argued that the restrained funds may in fact have been intended for a commercial purpose. In support of this argument, Libancell submitted a receipt for a wire transfer between Lebanon and Libancell, dated May 16, 2005, that had been drawn on an account at the Central Bank. (See Libancell's letter dated April 18, 2006, Ex. A). However, Libancell submitted no direct evidence that the restrained funds were in any way connected to any commercial transaction. Thus, Libancell did not provide sufficient support for continued restraint of the funds.

5

competent authority of the country in which, or under the law of which, the award was made.'" Skandia, 1997 WL 278054, *5 (quoting 9 U.S.C. § 201, Art. V(1)(e)).

However, Article VI "concerns a situation in which the party against whom an award has been entered seeks affirmative relief from the court. That situation is not at all the same as [the case at bar, where] the party that obtained an award seeks prejudgment security in a court of its own choosing." Concord Reinsurance, 1994 WL 86401, *2. See also Skandia, 1997 WL 278054, *5 n.10 (noting in dicta that Article VI of the New York Convention does not constitute an explicit waiver of immunity from prejudgment attachment). International Ins. Co. v. Caja Nacional De Ahorro Y Seguro, 293 F.3d 392 (7th Cir. 2002), upon which petitioner relies, is not to the contrary. There, a domestic insurer sought to confirm an arbitration award issued against an Argentinian reinsurer. International, 293 F.3d at 393-94. When the reinsurer answered and interposed several affirmative defenses, the petitioner sought an order requiring the respondent to post prejudgment security. Id. at 394. The Seventh Circuit affirmed the imposition of the bond, finding that Argentina had waived any immunity from prejudgment attachment by acceding to Article VI of the New York Convention. Id. at 399-400. However, in International the Argentinian instrumentality had affirmatively challenged the validity of the award by interposing affirmative defenses. In addition, since the arbitration award was issued in Chicago, see International, 293 F.3d at 397, the district court in International was a "competent authority" within the meaning of Article V(1)(e) of the New York Convention. See Skandia, 1997 WL 278054, *5 (a "competent authority" is a court "of the country in which, or under the law of which" an award is issued) (internal quotation omitted). Here, the arbitration award was issued in Beirut. Therefore, this court is not a "competent authority" under Article V(1)(e) of the New York Convention. Thus, International is inapposite. Article VI does not authorize prejudgment attachment when a petitioner seeks to collect on an award issued elsewhere. See Concord Reinsurance, 1994 WL 86401, *2.

Libancell's assertion that Lebanon's submission to arbitration before an UNCITRAL panel constituted an explicit waiver of immunity from prejudgment attachment is also unconvincing. Article 26 of the UNCITRAL rules allow an arbitral panel to impose "any interim measure it deems necessary" to protect "the subject matter

of the dispute." (See UNCITRAL Arbitration Rules, Art. 26, Ex. A to the Declaration of Eric L. Lewis, dated April 10, 2006). Article 26 also provides that "[a] request for interim measures addressed by any party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate, or a waiver of that agreement." (Id.) Libancell argues that these provisions constitute an explicit waiver of Lebanon's immunity from prejudgment attachment. In support of this argument, Libancell relies on Banco de Seguros, in which the Second Circuit found that a broad arbitration provision enabled an arbitrator to require a foreign instrumentality to post pre-hearing security. See Banco de Seguros, 344 F.3d at 261-62. The court analogized pre-hearing security to prejudgment attachment, and proceeded to determine whether immunity from such attachment had been waived pursuant to 28 U.S.C. § 1610(d). Id. at 260-61. However, unlike Banco de Seguros, here no such order was issued by any arbitrator. Instead, Libancell seeks prejudgment attachment in a jurisdiction other than that where the arbitration occurred. A "waiver of immunity from prejudgment attachment must be explicit in the common sense meaning of that word . . ." Id. at 261. Libancell has identified no such explicit waiver by Lebanon. Therefore, Lebanon is immune from prejudgment attachment pursuant to section 1610(d) of the FSIA.

### C. Preliminary Injunction

Libancell also sought a preliminary injunction preventing the transfer of Lebanon's assets pending the levy of an order of attachment. Because Libancell has not demonstrated that it is entitled to a prejudgment order of attachment, I need not determine whether Libancell is entitled to a preliminary injunction in aid of attachment. However, I will note that, as set forth above, New York law allows for the issuance of a temporary restraining order pending the determination of a motion on notice for an order of attachment. See N.Y. C.P.L.R. § 6210. In Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 333 (1999), the Supreme Court held that Fed. Rule Civ. P. 65 did not permit federal courts to enjoin parties from disposing of assets pending adjudication of a claim for money damages. However, the Court made clear that federal courts remain able to impose prejudgment remedies pursuant to Fed. R. Civ. P. 64 when those remedies are authorized by state law. Id. at 330-31. Thus, since New York

7

permits the issuance of a TRO pending determination of a motion for attachment, it appears that, in the proper case, petitioner would be entitled to injunctive relief in aid of attachment pursuant to Fed. R. Civ. P. 64.

### D. Post Judgment Attachment

Finally, I note that section 1610(a)(6) of the FSIA provides for post judgment attachment upon the confirmation of an arbitral award entered against a foreign state. See 28 U.S.C. § 1610(a)(6). In its petition filed in this court on April 10, 2006, Libancell seeks both recognition and enforcement of the arbitral award pursuant to the New York Convention, and recognition of the French judgment pursuant to Article 53 of the CPLR. Should Libancell ultimately succeed on either ground (after Lebanon has been served and has responded to the petition) the foreign award will be reduced to a domestic judgment and Libancell may seek to attach Lebanon's commercial assets under section 1610(a)(6).

### CONCLUSION

For the foregoing reasons, Libancell's motion for an order of prejudgment attachment and for a preliminary injunction is DENIED. The Clerk of the Court is directed to close this motion and remove it from my docket.

May 16, 2006
New York, New York

                                                 _____
                                                                U.S.D.J.